**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| TINA SOTTOSANTI-MACK, | : | CIVIL ACTION |
| Plaintiff, | : |  |
| v. | : | NO. 15-3255 |
|  | : |  |
| JOHN F. REINHART and | : |  |
| EASTON AREA SCHOOL DISTRICT, | : |  |
| Defendants. | : |  |

---

**MEMORANDUM**

Henry S. Perkin, M.J.                                                        March 28, 2016

This matter is before the Court on the Motion to Dismiss of Defendants John F.

Reinhart ("Mr. Reinhart") and Easton Area School District ("EASD") Pursuant to Fed. R. Civ. P.

12(b)(6).   This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331.[1]

Having reviewed and considered the contentions of the parties, the Court is prepared to rule on

this matter.

**I.      PROCEDURAL HISTORY.**

This action was commenced on May 14, 2015 by Tina Sottosanti-Mack

("Plaintiff" or "Ms. Sottosanti-Mack") in the Court of Common Pleas of Northampton County

alleging violations of her First Amendment rights pursuant to 28 U.S.C. § 1983 and various

pendent state law claims.   Defendants were served with the Complaint on or about May 26, 2015,

and on June 9, 2015, the Defendants removed this case to this Court on the basis of federal

question jurisdiction.   In Count I, she alleges that Mr. Reinhart, the Superintendent of the EASD,

---

[1]          This case was assigned to the docket of the Honorable Lawrence F. Stengel. The parties consented
to trial before the undersigned pursuant to 28 U.S.C. § 636 and Judge Stengel approved the consent and ordered the
case transferred on August 17, 2015. See Dkt. No. 5.

violated her First Amendment rights pursuant to 42 U.S.C. § 1983.  In Count II, Ms. Sottosanti-Mack alleges violations of her First Amendment rights by the EASD.  In Count III, Ms. Sottosanti-Mack alleges violations of the Pennsylvania Constitution.  In Count IV, Ms. Sottosanti-Mack alleges that Mr. Reinhart defamed her and in Count V, Ms. Sottosanti-Mack alleges that Mr. Reinhart committed false light invasion of her privacy.

On June 17, 2015, Defendants filed the instant Motion to Dismiss.  On August 12, 2015, Ms. Sottosanti-Mack's Response to the Motion was filed.  On August 17, 2015, Judge Stengel approved the consent and transfer for this case to be tried before the undersigned.  The Defendants' Reply Brief was filed on August 26, 2015, and Plaintiff's Brief Contra Defendants' Reply Brief was filed on September 8, 2015.

## II.    FACTS.

Based upon the averments in the Complaint, the pertinent facts, viewed in the light most favorable to Plaintiff, are as follows:

John F. Reinhart is the Superintendent of the Easton Area School District located in Northampton County, Pennsylvania.  Compl., ¶ 2.  Tina Sottosanti-Mack is the biological mother and a custodial parent of Dante Mack.  Compl., ¶ 6.  From the beginning of his Fall, 2013 semester of fifth grade through the conclusion of the Spring, 2014 semester, Dante Mack had a classmate, A.B.  Id., ¶ 9.  A.B. had a number of psychological, emotional and developmental issues which A.B.'s mother had made public in her address during a hearing before the United States Senate Committee on Health, Education, Labor and Pensions in 2012.  Id., ¶ 10.  The address by A.B.'s mother, including detailed information about A.B's behavioral disorders, was picked up by the Associated Press and other news media and given wide publication.  Id., ¶ 11.

2

At the time of A.B.'s enrollment in the Easton Area School District in March, 2012, the school district and its administrative personnel, including John F. Reinhart, had both actual knowledge and constructive knowledge from A.B.'s mother and other sources that A.B. suffered from intermittent explosive disorder, oppositional defiance disorder, attention deficit hyperactivity disorder, bipolar disorder and pervasive developmental disorder.  Id., ¶ 12.  It is believed and therefore averred that the Easton Area School District received written reports that A.B. physically assaulted approximately five (5) classmates, including Dante Mack, during the Fall, 2013 semester.  Id., ¶ 13.

In or about January, 2014, A.B. punched both Dante Mack and another fifth grade student in their chests when they told A.B. that he should stop teasing a younger student who suffered from autism. This incident was also the subject of a written report submitted to school district administrative personnel.  Id., ¶ 14.  On or about April 1, 2014, A.B. demanded that Dante Mack give to A.B. a pencil saying "if you don't give me the pencil, I'm going to hurt you." Id., ¶ 15.  After Dante Mack refused to surrender his pencil, A.B. seized the particular pencil and jabbed Dante Mack in the cheek, barely missing his eye.  Id., ¶ 16.  A written report of the pencil jabbing incident was immediately made by or on behalf of Dante Mack and perhaps one or more school district employees.  Id., ¶ 17.

On or about April 4, 2014, upon learning that A.B., after a short suspension, was again attending regular classes in the same classroom as Dante Mack, Ms. Sottosanti-Mack contacted Mr. Reinhart to ascertain what actions the school district intended to take to protect her son and other students from the aggression of A.B.  Id., ¶ 18.  Mr. Reinhart telephonically informed Ms. Sottosanti-Mack that he had no knowledge of the incident of April 1, 2014, but he

was sure that any ensuing disciplinary action concerning A.B. had been handled properly.  Id., ¶ 19.  After additional discussion, Ms. Sottosanti-Mack informed Mr. Reinhart that she was considering contacting the newspaper concerning the matter.  Id., ¶ 20.  Mr. Reinhart thereupon told Ms. Sottosanti-Mack that she had no idea what she was getting into and that she should be very careful.  Id., ¶ 21.  Ms. Sottosanti-Mack further informed Mr. Reinhart during said telephone conversation that other parents knew about the situation with A.B. and also were upset. Id., ¶ 22.  Mr. Reinhart then informed Ms. Sottosanti-Mack that she and the other parents should not be discussing "school business," became irate and yelled so loudly at Ms. Sottosanti-Mack that her co-workers were able to overhear Mr. Reinhart's yelling.  Id., ¶ 23.   When he somewhat regained his composure, Mr. Reinhart again requested that Ms. Sottosanti-Mack not contact the press until he had time "to look into things."  Id., ¶  24.

A few days after said telephone conversation, Mr. Reinhart left a voicemail message for Ms. Sottosanti-Mack indicating that the disciplinary action that initially had been taken concerning A.B. was appropriate.  Id., ¶ 25.  Over the course of the ensuing weeks, Ms. Sottosanti-Mack spoke and corresponded with the principal of the Easton Area Middle School Grades 5/6 about the district's response to the incident of April 1, 2014 and about new incidents of A.B.'s bullying of other students, including his utterances of racial epithets and anti-gay sentiments.  Id., ¶ 26.  On May 15, 2014 at 4:43 p.m., Ms. Sottosanti-Mack forwarded an e-mail to the middle school principal, to Mr. Reinhart and to another school district employee which, among other things, set forth the various disorders suffered by A.B. (listed herein in paragraph 12) as had been published by A.B.'s mother herself and disseminated through various media outlets. Id., ¶ 27. (Compl., Ex. A).

4

Ms. Sottosanti-Mack's May 15, 2014 e-mail reveals that A.B.'s mother was a source of the information concerning A.B.'s disorders and the e-mail further reveals that Ms. Sottosanti-Mack obtained her information about A.B.'s disorders from an "article" which noted that a representative of the Easton Area School District declined to comment on the article.  Id., ¶ 28.  On May 16, 2014 at 8:49 a.m., Mr. Reinhart published an e-mail set forth under the subject of "Dante Mack" in response to Ms. Sottosanti-Mack's May 15, 2014 e-mail.  Id., ¶ 29.

Mr. Reinhart's e-mail was forwarded to Ms. Sottosanti-Mack; to the school district's attorney, John E. Freund, III; to school district employees, Jena Brodhead, Charlene Symia and William Rider; and to individuals/entities designated as "superteam" and "boe" which the Plaintiff believes represent groups of Easton Area School District employees.  Id., ¶ 30.  It is believed that all of the addressees of Mr. Reinhart's subject e-mail sent on May 16, 2014 at 8:49 a.m. received, read and comprehended same.  Id., ¶ 30.  The subject e-mail of Mr. Reinhart reads, in its entirety:

> Everyone, please note this clear violation of the law by this individual. Someone at the school has disclosed this information to her and I want to know who it was ... Dr. Symia, please start an investigation into this immediately today and let me know what we uncover.
>
> > Mrs. Mack,
> > Our attorney will seriously and effectively take care of you for obtaining this information and publishing this in an email. You are stepping well over the line of propriety to the point of breaking the law. I suggest that you inform your attorney about this email and I also suggest that you understand that the district will not sit back and permit you to violate the law regarding this type of flagrant offense. I am forwarding this to our attorney this morning. If I find out that you received information from an employee, he or she will be fired immediately.
> >
> > John Reinhart

Id., ¶ 31 (Compl., Ex. B).  Mr. Reinhart published a second e-mail on May 16, 2014 at 4:05 p.m.

which was addressed to "Mrs. Mack" and was forwarded to Ms. Sottosanti-Mack, boe,

superteam, John Freund, III and Charlene Symia.  Id., ¶ 32 (Compl., Ex. C.)  It is believed that all

of the addressees of Mr. Reinhart's e-mail sent on May 16, 2014 at 4:05 p.m. received, read and

comprehended same.  Id., ¶ 37.  In that e-mail, Mr. Reinhart stated: "I question the wisdom or

fairness of publishing such information about another child in an email to others.... You were

wrong in doing that."  The email also states, "You told me in our previous conversation that you

'have friends in that school who are telling you what is going on'. . . . I asked you for the names

of those individuals who are disclosing information to you and you would not give me their

names. You threatened me with going to the paper - which you did."  "You write letters to the

paper and share medical information in emails about other students without discretion."  Id., ¶¶

38-39 (Compl., Ex. C.)

## III.    STANDARD OF REVIEW.

On a motion to dismiss for failure to state a claim, courts accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.  Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell

Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) (citing Papasan v. Allain, 478 U.S. 265, 268

(1986)).

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.

The United States Court of Appeals for the Third Circuit has directed district courts to conduct a three-part analysis when faced with a motion to dismiss for failure to state a claim. Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. Jan. 11, 2016).[2]  First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

---

[2]     The Third Circuit explains:

Although Ashcroft v. Iqbal described the process as a "two-pronged approach," 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, id. at 675-79. Thus, we have described the process as a three-step approach. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing Santiago, 629 F.3d at 130).

Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 n.4  (3d Cir. Jan. 11, 2016).

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).  A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still – as we have already emphasized – assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.  Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014); see also Phillips, 515 F.3d at 231 (holding that Twombly did not "undermine [the] principle" that all reasonable inferences are to be drawn in favor of the plaintiff, and reaffirming that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits").

III.    **DISCUSSION**.

    A.    **Claim for Violations of the Pennsylvania Constitution (Count III).**

Plaintiff concedes the dismissal of Count III of the Complaint alleging violations of Article I, Section 7 of the Pennsylvania Constitution.[3]  Thus, Count III of the Complaint will

---

[3]    Defendants move for dismissal of this claim because Pennsylvania courts have held that the Pennsylvania Constitution does not provide a private cause of action for damages.  Mot., pp. 7-8 (citations omitted).

be dismissed with prejudice, pursuant to the agreement of the parties.

**B.    First Amendment Claims Pursuant to 42 U.S.C. § 1983 Against Mr. Reinhart (Count I) and the EASD (Count II).**

1.    <u>Merits of Claims</u>

To state a claim under Section 1983, Plaintiff must meet two threshold requirements. She must aver: (1) that alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Plaintiff alleges that Mr. Reinhart was acting under color of state law and she avers that his actions in intimidating, humiliating and defaming her and threatening sanctions against her for her publication of information that was unprotected, non-privileged information in the public domain and for her association and discourse with parents of other students and with school district personnel violated her First Amendment rights to freedom of speech and free expression.

Defendants move for dismissal of Ms. Sottosanti-Mack's claims in Count I and II of the Complaint on the basis that Plaintiff fails to assert a First Amendment violation claim. The operative portions of the Complaint are:

18.  On or about April 4, 2014, upon learning that A.B., after a short suspension, was again attending regular classes in the same classroom as Dante Mack, Ms. Sottosanti-Mack contacted Mr. Reinhart to ascertain what actions the school district intended to take to protect her son and other students from the aggression of A.B.

20.  After additional discussion during which Ms. Sottosanti-Mack developed the opinion that the school district was jeopardizing the safety of her son and others, Ms. Sottosanti-Mack informed Mr. Reinhart that she was considering contacting the newspaper concerning the matter.

9

21.  Mr. Reinhart thereupon told Ms. Sottosanti-Mack that she had no idea what she was getting herself into and that she should be very careful.

22.  Ms. Sottosanti-Mack further informed Mr. Reinhart during said telephone conversation that other parents knew about the situation with A.B. and also were upset.

23.  Mr. Reinhart then informed Ms. Sottosanti-Mack that she and the other parents should not be discussing "school business," became irate and yelled so loudly at Ms. Sottosanti-Mack that her co-workers were able to overhear Mr. Reinhart's yelling.

24.  When he somewhat regained his composure, Mr. Reinhart again requested that Ms. Sottosanti-Mack not contact the press until he had time "to look into things."

25.  A few days after said telephone conversation, Mr. Reinhart left a voicemail message for Ms. Sottosanti-Mack indicating that the disciplinary action that initially had been taken concerning A.B. was appropriate.

26.  Over the course of the ensuing weeks, Ms. Sottosanti-Mack spoke and corresponded with the principal of the Easton Area Middle School Grades 5/6 about the district's response to the incident of April 1, 2014 and about new incidents of A.B.'s bullying of other students, including his utterances of racial epithets and anti-gay sentiments.

27.  On May 15, 2014 at 4:42 p.m., Ms. Sottosanti-Mack forwarded an e-mail to the middle school principal, to Mr. Reinhart and to another school district employee which, among other things, set forth the various disorders suffered by A.B. (Listed herein in paragraph 12) as had been published by A.B.'s mother herself and disseminated through various media outlets.  (A true and correct copy of Ms. Sottosanti-Mack's subject e-mail of May 15, 2014, with the redaction of A.B.'s actual name, is attached hereto, made a part hereof and marked Exhibit "A").

28.  Ms. Sottosanti-Mack's e-mail of May 15, 2014 clearly reveals that A.B.'s mother was a source of the information concerning A.B.'s disorders and the e-mail further reveals that Ms. Sottosanti-Mack obtained her information about A.B.'s disorders from an "article" which noted that a representative of the Easton Area School District declined to comment on the article.

Compl., ¶¶ 18-24.  To succeed on a First Amendment violation claim against a government

10

official, a plaintiff must prove: (1) that she engaged in protected conduct; (2) the public official responded with action "sufficient to deter a person of ordinary firmness" from exercising her First Amendment rights; and (3) the protected expression and adverse action were causally related.  Ashton v. City of Uniontown, 459 F.App'x 185, 187 (3d Cir. 2012)(citing Thomas v. Indep. Twshp., 463 F.3d 285, 296 (3d Cir. 2006)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Defendants contend that Ms. Sottosanti-Mack's disclosure of statutorily protected special education information is not First Amendment protected expression.  Plaintiff notes that this argument is factually inaccurate as to the source of the disclosure because, as Plaintiff avers in the Complaint, A.B.'s mother herself publicly disclosed her son's mental health information and Plaintiff "merely republished" that which is neither protected nor privileged, but more importantly, none of the First Amendment violations of which Plaintiff complains are connected to A.B.'s mental health information.  Resp., pp. 6-7.  Plaintiff responds that "numerous of the constitutional violations complained of occurred prior to any discussions or revelations concerning A.B.'s mental health history and a fair reading of the Complaint demonstrates that Mr. Reinhart used the Plaintiff's republication of the information concerning A.B.'s emotional issues as an excuse and pretense to stifle her criticism of the district for its unresponsiveness and ineffectiveness in halting A.B.'s assaults."  Id. at 8.

The next question in the analysis regarding First Amendment retaliation is whether Mr Reinhart's emails to Plaintiff would deter a person of ordinary firmness from exercising her First Amendment rights.  Plaintiff notes that the following constitute just such actions by Mr. Reinhart: (1) during their April 4, 2014 telephone conversation, Mr. Reinhart told

Plaintiff that she had no idea what she was getting into and that she should be very careful (Compl., ¶ 21); (2) Mr. Reinhart's May 16, 2014 email contained the following language "Everyone, please note this clear violation of the law by this individual . . . Our attorney will seriously and effectively take care of you for obtaining this information and publishing it in an email . . . [T]he district will not sit back and permit you to violate the law regarding this type of flagrant offense." (Compl., ¶ 32, Ex. B.)  Defendants cite <u>Suarez Corp. Indus. v. McGraw III</u>, 202 F.3d 676 (4th Cir. 2000), for its holding that:

> [W]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.

<u>Suarez</u>, 202 F.2d at 687.  Taking the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff provides sufficient facts to support her claim for First Amendment retaliation.  Therefore, I will deny Defendants' Motion with regard to this claim.

### 2.    Qualified Immunity as to Mr. Reinhart.

Defendants note that the United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mot., p. 6 (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Defendants argue that Mr. Reinhart is entitled to qualified immunity on Plaintiffs' claims in Count I of the Complaint because he reasonably believed that an employee of the EASD disclosed to Plaintiff the confidential special education information of a student.  Mot., pp. 6-7.  Plaintiff correctly responds, howver, that the Court's focus should not

be upon the republication by Plaintiff of A.B.'s medical information, but it should be on Mr.

Reinhart's alleged actions taken in retaliation for Plaintiff's exercise of her First Amendment

rights. Resp., pp. 12-13.  Plaintiff notes that Defendants "intimate[] . . . that [Reinhart] did not

know that his alleged coercion, intimidation and threats of criminal prosecution were

constitutional violations.  That is tantamount to arguing that a police officer who unjustifiably

beats and injures a criminal suspect is not liable for any constitutional violation because he is

unfamiliar with the fine points of constitutional jurisprudence." Id. at 13-14.  Because a

reasonable school administrator in the position as Mr. Reinhart should have known that the

statements amounting to coercion, intimidation and threats of lawsuits or prosecution might chill

Plaintiff's criticism of the EASD and violate her First Amendment rights, Mr. Reinhart is not

entitled to qualified immunity at this time.  Following development of the record, the Court's

analysis on this issue may be different, but at this Motion to Dismiss stage, Defendants' Motion

must be denied.

> C. **State Law Claims for Defamation and False Light Invasion of Privacy Against Mr. Reinhart (Counts IV and V).**
>
> > 1. Defenses
> >
> > > a. High Public Official Immunity

Defendants argue that Mr. Reinhart is immune from liability on Plaintiff's state

tort claims of defamation and false light invasion of privacy because high public official

immunity exempts him from liability for damages arising out of defamatory statements and from

statements or actions motivated by malice provided the statements are made or actions are taken

in the course of the official's duties or powers pursuant to Byars v. Sch. Dist. of Phila., 942 F.

Supp.2d 552, 562-63 (E.D. Pa. 2013)(School District Superintendent immune from tort and defamation claims where "statements made and conduct taken in connection with School District business") and Smith v. Sch. Dist. of Phila., 112 F. Supp.2d 417, 425 (E.D. Pa. 2000)(citing Petula v. Mellody, 631 A.2d 762 (Pa. Commw. Ct. 1993)).

Plaintiff argues that the forum from which Mr. Reinhart sent the emails is unknown, whether it was from his home, personal vehicle or office and also whether the time in which Mr. Reinhart's second email was sent, just before 9 a.m. on May 16, 2014, is a time that Mr. Reinhart's contract with the EASD requires or permits him to perform his official duties.

Plaintiff also questions whether the emails were "closely related" to Mr. Reinhart's legitimate duties, stating "[p]erhaps the Easton Area School District has policies forbidding its administrative personnel from using email to communicate with students and/or their families. If so, the defamatory emails sent by Mr. Reinhart on May 16, 2014 were not sent pursuant to the performance of his legitimate duties." Resp., p. 19. Plaintiff also responds that the doctrine of high public official immunity is not absolute and does not provide high public officials with immunity under all circumstances and in all cases. Because this case is at the motion to dismiss stage, Plaintiff contends that her "specific allegations pled by the Plaintiff and because of the undeveloped record at this stage of the proceedings, compelling and controlling caselaw demonstrates that the Defendant Reinhart is not entitled to this immunity." Pl.'s Resp., p. 15. Further, Plaintiff questions whether the emails were sent pursuant to the performance of Mr. Reinhart's official duties, and "[p]erhaps the Easton Area School District has policies forbidding its administrative personnel from using e-mail to communicate with students and/or their families." Id. at 19.

In response, Defendants argue that this Court must consider, in determining whether the doctrine of high public official immunity applies, whether Mr. Reinhart's statements were "closely related" to his job duties as Superintendent.  Reply Br., pp. 5-6.  Defendants also argue that the  Defendants contend that these communications were undertaken by Reinhart acting in his official capacity and should therefore be dismissed.

Finally, Defendants contend that Mr. Reinhart's statements to Plaintiff could not be perceived as defamatory, but if they could be so construed, the emails were made on a conditionally privileged occasion, in this case, directing school district employees to conduct an investigation and include only the information relevant to Mr. Reinhart's suspicion of an unauthorized disclosure because the School District has a strong interest in preserving the integrity of its educational programs, including the Special Education program.

Although it strongly appears that Mr. Reinhart's emails were  "closely related" to his job duties as Superintendent and therefore undertaken by Mr. Reinhart acting in his official capacity, the record is not sufficiently developed to determine whether Mr. Reinhart is entitled to high public official immunity at this time.

2.     Pennsylvania's Political Subdivision Tort Claims Act

Defendants next move for dismissal of the state law claims against Mr. Reinhart on the basis that he is protected from liability under the Pennsylvania Political Subdivision Tort Claims Act, rendering him immune from liability for injuries caused by acts he performs within the scope of his office or duties.  See 42 Pa. C.S.A. § 8545.  Plaintiff, in her Response in Opposition to Defendants' Motion to Dismiss, clarifies that her state law claims are brought solely against Mr. Reinhart in his individual capacity.  Resp., pp. 20-22.  Thus, Mr. Reinhart is

not immune from liability pursuant to Plaintiff's state law claims for defamation and false light invasion of privacy under the Pennsylvania Political Subdivision Tort Claims Act.  See Kane v. Chester County Dep't of Children, Youth & Families, 10 F. Supp.3d 671, 695, 697 (E.D. Pa. Mar. 31, 2014).

        3.      Merits of the State Law Claims.

        a.     *Defamation*.

In order to establish a claim of defamation, the plaintiff must prove: (1) the defamatory character of a communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a). A plaintiff need not prove special harm if a statement is defamatory *per se*. Synergy, Inc. v. Scot-Levin, Inc., 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (3d Cir. 2000). Words tending to impute criminal offense, loathsome disease, business misconduct, or serious sexual misconduct constitute defamation *per se*. Clemente v. Espinosa, 749 F. Supp. 672, 677 (E.D. Pa. 1990).

Defendants contend that, within context, Mr. Reinhart's emails could not be considered defamatory because Plaintiff herself via email initiated the exchange of information by informing Reinhart and other EASD employees that she knew information about a special education student that she "wasn't supposed to know."  Mot., pp. 13-14.  Even if Mr. Reinhart's communications were defamatory, Defendants contend that they were made on a conditionally

privileged occasion.  Id. at 13-14 (citing Emekekwue v. Offor, 26 F. Supp.3d 348, 364 (M.D. Pa. 2014)(citation omitted)).  Defendants note that communications are privileged when they are "made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause."  Id. at 14 (quoting Choi v. Sohn, Civ.A. No. 01-1782, 2004 WL 627060, at *3 (E.D. Pa. Mar. 1, 2004)(citation omitted)).  Because the email communications in response to Plaintiff's email were sent to a limited group of EASD employees and directed an investigation into potential internal wrongdoing, Defendant contends that they could not be reasonably construed as defamatory because the EASD has a strong interest in preserving the integrity of its educational programs.  Id. at 14-15.

Plaintiff points to the language in Mr. Reinhart's emails which alleged that she committed a "violation of the law", "breaking the law" and violating "the law regarding this type of flagrant offense" as language that harmed her reputation because it imputed criminal offense to her.  Compl., Ex. B.  Plaintiff further contends that the audience of teachers and administrators to whom Mr. Reinhart's emails were directed were acquainted with Plaintiff, who is the parent of a child in the EASD.  As such, the association made by the recipients of the emails between the information in the emails which Plaintiff alleges was defamatory and Plaintiff was direct and personal.  Finally, Plaintiff correctly contends that conditional privilege is not available, at this stage of the litigation, to Defendants and Plaintiff's allegations of malice strip Defendants of this privilege at this time.  Resp., pp. 24-25 (citing Emekekwue, 26 F. Supp3d at 364-65).  Defendants' Motion is denied with respect to Plaintiff's defamation.

b.    *False Light Invasion of Privacy*.

A cause of action for invasion of privacy is comprised of four distinct torts: "(1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in a false light." Byars v. School Dist. of Phila., 942 F. Supp.2d 552, 566 (E.D. Pa. Apr. 20, 2013)(quoting Krajewski v. Gusoff, 53 A.3d 793, 805 (Pa. Super. 2012)).  Pennsylvania recognizes the fourth such tort as false light invasion of privacy which is defined by the Restatement (Second) of Torts as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Id. (quoting RESTATEMENT (SECOND) OF TORTS § 652E).  "Unlike invasion of privacy for publicity given to private life, 'false light does not require proof that the matter giving rise to the plaintiff's claim be restricted to one of private concern.'" Id. at 566-567 (quoting Krajewski, 53 A.3d at 806).   The operative portions of the Complaint regarding Plaintiff's false light invasion of privacy are:

> 29.  On May 28, 2014 at 8:49 a.m., Mr. Reinhart published an e-mail set forth under the subject of "Dante Mack" which was plainly and unequivocally in response to Ms. Sottosanti-Mack's aforementioned e-mail of May 15, 2014.

> 30.  Mr. Reinhart's subject e-mail was forwarded to Ms. Sottosanti-Mack; to the school district's attorney, John F. Freund, III; to school district employees, Jena Brodhead, Charlene Symia and William Rider; and to individuals/entities designated as "superteam" and "boe" which the Plaintiff believes represent groups of Easton Area School District employees.

18

31.  It is believed that all of the addressees of Mr. Reinhart's subject e-mail sent on May 16, 2014 at 8:49 a.m. received, read and comprehended same.

32.  The subject e-mail of Mr. Reinhart reads, in its entirety:

> Everyone, please note this clear violation of the law by this individual.  Someone at the school has disclosed this information to her and I want to know who it was . . . Dr. Symia, please start an investigation into this immediately today and let me know what we uncover.

> Mrs. Mack,

> Our attorney will seriously and effectively take care of you for obtaining this information and publishing this in an email.  You are stepping well over the line of propriety to the point of breaking the law.  I suggest that you inform your attorney about this email and I also suggest that you understand that the district will not sit back and permit you to violate the law regarding this type of flagrant offense.  I am forwarding this to our attorney this morning.  If I find out that you received this information from an employee, he or she will be fired immediately.

> John Reinhart

35.  Apparently not being content with the extent of the libelous and constitutionally infringing content of the e-mail published at 8:49 a.m. on May 16, 2014, Mr. Reinhart published a second e-mail on that date at 4:05 p.m. (A true and correct copy of the subject e-mail published May 16, 2014 at 4:05 p.m. is attached hereto, made a part hereof and marked Exhibit "C"). [4]

---

[4]      Exhibit C to the Complaint is a copy of the May 16, 2014 email sent at 4:05 p.m. from Mr. Reinhart to Ms. Sottosanti-Mack.  The recipient list is Plaintiff, the EASD's Solicitor, John F. Freund, III, Charlene Symia and BOE and Superteam of the EASD.  The contents of the email are:

Mrs. Mack,

I am not now, nor have I ever been, sympathetic to bullies.  You have been quick to make judgements about everyone involved in these circumstances.  The district has implemented strategies in school to address your concerns regarding your son.  We have not ignored these circumstances.  You told me in our previous conversation that you "have friends in that school who are telling you what is going on" and you referred to our students as "juvenile delinquents".  I

36.  The 4:05 p.m. e-mail was expressly addressed to "Mrs. Mack" and was forwarded to Ms. Sottosanti-Mack, boe, superteam, John Freund, III and Charlene Symia.

37.  It is believed that all of the addressees of Mr. Reinhart's subject e-mail sent on May 16, 2014 at 4:05 p.m. received, read and comprehended same.

40.  The statements and publications of Mr. Reinhart imputing wrongful, unlawful and/or criminal conduct to Ms. Sottosanti-Mack were untrue.

41.  Mr. Reinhart knew, or reasonably should have known, that his statements imputing wrongful, unlawful and/or criminal conduct to Ms. Sottosanti-Mack were untrue.

42.  The publications of Mr. Reinhart were made with malice and with knowledge of their falsity and with reckless disregard as to their truth.

43.  Mr. Reinhart's conduct in publishing the defamatory statements imputing the wrongfulness, unlawfulness and/or criminality of Ms. Sottosanti-Mack's actions constituted actual malice and willful misconduct.

---

asked you for the names of the individuals who are disclosing information to you and you would not give me their names.  You threatened me with going to the paper . . . which you did.

Publishing what is considered to be private information about another child is a very serious thing to do.  From your previous statement, I had every reason to believe that someone from the district shared that information with you.  While you did not get that medical information from school employees, thank God, I question the wisdom or fairness of publishing such information about another child in an email to others.  You would not want anyone to do that regarding your son's personal health information.  You were wrong in doing that.

By the way, I have every right to tell you that I am turning this over to our attorney for advice and review.  I also want to make it clear, in writing, to you that I will discipline any employee who provides you with confidential information about other students or any other employees in this district.

The threats began with you from the start.  Unfortunately, you do not have all of the information about this situation and we cannot, and will not, disclose confidential information to you just because you write letters to the paper and share medical information in emails about other students without discretion.  Mr. Reinhart

Compl., Ex. C.

44.  Mr. Reinhart's aforedescribed actions constitute violations of 42 Pa.C.S.A. Section 8550.

70.  Ms. Sottosanti-Mack's original e-mail communications with Mr. Reinhart were shared with only two (2) other recipients, both of whom were school district employees from whom Ms. Sottosanti-Mack sought help concerning the assaults on her son.

71.  Mr. Reinhart, intentionally and willfully, greatly expanded the number of recipients of e-mails for the purpose of casting Ms. Sottosant-Mack in a false light to a greater audience.

72.  The invasion of privacy thus occasioned upon Ms. Sottosanti-Mack was highly offensive to her and would be highly offensive to any reasonable person.

73.  Mr. Reinhart had knowledge of the falsity of his publicized allegations and acted in reckless disregard of such knowledge.

74.  Mr. Reinhart had knowledge of the falsity of the light in which he placed Ms. Sottosanti-Mack and acted in reckless disregard of such knowledge.

75.  Mr. Reinhart, at all relevant times, acted with actual malice toward Ms. Sottosanti-Mack.

Compl., ¶¶ 29-37, 40-44.

Defendants argue that Plaintiff's claim must be dismissed because Plaintiff has not asserted the necessary element of publicity.  Specifically, Defendants cite the Byars case in which comment a to the Restatement (Second) of Torts § 625 is cited, which defines publicity in false light invasion of privacy as making a matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Byars, 942 F. Supp.2d at 567 (quoting RESTATEMENT (SECOND) OF

Torts § 652D cmt. a; § 652E and <u>Harris by Harris v. Easton Publ'g Co.</u>, 483 A.2d 1377, 1384

(Pa. Super. 1984)).   Further, publicity must be such that the communication "reaches, or is sure

to reach, the public."   <u>Id.</u> (quoting <u>Harris</u>, 483 A.2d at 1384).   It is not an invasion of the right of

privacy "to communicate a fact concerning the plaintiff's private life to a single person or even to

a small group of persons."   <u>Id.</u> (quoting Restatement (Second) of Torts § 652D cmt. a).

Plaintiff responds that it is unknown at this stage of the proceedings the size of the

audience to whom Mr. Reinhart published his two May 16, 2014 emails, since there are two

groups of individuals, "boe" and "superteam" listed in the email addresses.   Defendants attach an

affidavit executed by defense counsel in which he attests that the Superteam is a select team of

School District administrators and boe is members of the Board of Education.   Reply Br., Ex. A.

Defendants also argue, without support, that "[a]n email from the School District Superintendent

to School District employees, all of whom are bound by the same rules of confidentiality

regarding student information as articulated in Defendants' Brief, is not considered a

'publication' under any tort theory."   Reply Br., p. 8.   Plaintiff notes, however, that Defendants

do not state how many members comprise either of these groups, therefore it is still impossible to

know if this was a small or large group of persons to whom Mr. Reinhart communicated a fact

concerning the Plaintiff's private life.   Surreply Br., p. 5-6.   Plaintiffs also correctly note that this

Court cannot consider defense counsel's Affidavit because it is testimonial and beyond the

pleadings, setting forth facts that may be in dispute.   At this stage of the litigation, it is

impossible for this Court to know the number of persons to whom Mr. Reinhart's emails were

distributed, therefore it is impossible to know whether the publication requirement of this tort is

satisfied.   Plaintiff provides sufficient facts to support her claim for false light invasion of

privacy.  Therefore, I will deny Defendants' Motion with regard to the false light invasion of privacy claim.

## IV.    <u>CONCLUSION</u>.

For the reasons set forth above, Defendants' Motion to Dismiss will be granted in part and denied in part.  An appropriate Order follows.